UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
                          :

UNITED STATES OF AMERICA,   :

                          :

    Plaintiff,             :     **06-CR-1179 (RJH) (S2)**

                          :

      v.                :

                          :

GALINA ZHIGUN,         :

                          :

    Defendant.          :
-----------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT GALINA ZHIGUN'S
## PRE-TRIAL MOTIONS


Robert F. Katzberg, Esq.
KAPLAN & KATZBERG
767 Third Avenue, 26th Fl.
New York, New York 10017

Attorneys for Defendant
Galina Zhigun


Mayo Schreiber, Jr., Esq.
On the Brief

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT                                          1

POINT ONE: A BILL OF PARTICULARS IS REQUIRED        1

    a. Procedural History                                      1

    b. Legal Analysis                                         3

        1.  The Identity of Unnamed Co-Conspirators
and Other Persons referred to in the Indictment,
but not Named                                             6

        2.  The Location Where Events are Alleged to
Have Taken Place                                          6

        3.  The Specific "False Information" the
Government is Alleging the Defendants
Provided, or the "Material Omissions" Involved
in Obtaining The Mortgages in Question                    7

        4.  The Identity of the Properties Subject
to the Allegedly False Applications                       7

POINT TWO: THERE WAS NO PROBABLE CAUSE
TO SEARCH DEFENDANT'S OFFICE.  THE ITEMS
SEIZED MUST ACCORDINGLY BE SUPPRESSED             8

    a.  Procedural History                                     8

    b.  The Affidavit in Support of the Search Warrants        9

    c.  Legal Analysis                                        13

        1.  Propinquity                                       15

2.  Staleness                                                    15

CONCLUSION                                                        18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
                         :

UNITED STATES OF AMERICA,   :  **MEMORANDUM OF LAW**
                         :  **IN SUPPORT OF DEFENDANT**
         Plaintiff,    :  **GALINA ZHIGUN'S**
                         :  **PRE-TRIAL MOTIONS**
       v.             : 
                         :  **06-CR-1179 (RJH) (S2)**

GALINA ZHIGUN,        :
                         :
        Defendant.    :
-----------------------------------------------X

## PRELIMINARY STATEMENT

Defendant Galina Zhigun submits this Memorandum of Law pursuant to Rule 12(b), Fed.R.Crim.P., in support of her pre-trial motions for: (1) an order requiring the government to provide a bill of particulars pursuant to Rule 7(f), Fed.R.Crim.P., and (2) the suppression of evidence seized from the office of AGA Capital/Lending Universe at 2729 Coney Island Avenue, Brooklyn, New York. This memorandum details the factual and legal bases for the relief requested in the separate points that follow.

## POINT ONE: A BILL OF PARTICULARS IS REQUIRED

### a. Procedural History

The instant indictment is the second superseding indictment in this matter and, like its predecessors, alleges bank, wire and mail fraud, and

conspiracy to commit same, in which various banks and lending institutions were allegedly defrauded by defendants, in their capacity as mortgage brokers, who submitted applications and supporting documentation for mortgages and home equity loans with allegedly false or misleading information. Defendant Zhigun was not named in the original indictment filed in January 2007, but was added in the July 2007 superseder.

Shortly after her arraignment on the superseding indictment, on July 19, 2007, counsel for Ms. Zhigun wrote the government seeking informal discovery and particulars. A copy of that letter is appended to the accompanying Notice of Motion as "Exhibit A."[1] A series of letters between the government and Ms. Zhigun followed, and over time the government has made available for duplication and inspection much of the Rule 16 discovery

---

[1] Defendant's July 19, 2007 letter was addressed to the first superseding indictment, and the portion seeking particulars appears at pages seven and eight. On October 9, 2007, a second superseding indictment was filed, adding Alexander Kaplan as a defendant in eleven of the fraud counts. The second superseding indictment does not substantively change, add to, or remove any of the charges regarding Ms. Zhigun. Given that the allegations made against Ms. Zhigun in the present, second superseding indictment, are the same and appear in the same charging counts, there was no need to repeat the demands originally made captioned to the second superseder. For this motion, we note the following numerical change. Since a paragraph has been added in count one connected to the inclusion of another defendant, Alexander Kaplan, the charge in count nine against Ms. Zhigun is now reflected in ¶35 instead of ¶34, and the charge in count fifteen is now reflected in ¶37 instead of ¶36. The language charging Ms. Zhigun in these counts is otherwise identical.

requested, involving many thousands of pages of mortgage and loan documents and thousands of recordings of telephone calls. Indeed, that cooperative endeavor is ongoing. Unfortunately, however, the government has not provided any of the particulars sought, giving rise to the instant motion to compel. As is detailed below, the particulars sought herein are all necessary for Ms. Zhigun to adequately prepare her defense and each contain the kind of information routinely required by Rule 7(f).

### b. Legal Analysis

The current indictment alleges that some twenty-seven defendants and an unknown number of unindicted and unidentified individuals sought and obtained a myriad of fraudulent mortgages over a three year period, resulting in millions of dollars of losses to allegedly defrauded lenders. Not surprisingly, given the complexity and scope of the conspiracy charged, the government's case is predicated upon voluminous records. Unfortunately, the government has essentially taken the position that by providing access to the documents underlying its case, no particulars are required. This position, which renders Rule 7(f) a virtual nullity, is clearly erroneous.

It is settled that Rules 16 and 7(f) have related, but different functions. Whereas Rule 16, Fed.R.Crim.P. is designed to provide a defendant with sufficient information to make an informed decisions about a

3

plea, to allow the Court to rule on the admissibility of evidence before trial and to minimize prejudicial surprise at trial, see, e.g., United States v. Hernandez-Muniz, 170 F.3d 1007, 1010 (10th Cir. 1999); United States v. Graham, 2000 WL 1902425 (D. Conn.), Rule 7(f) is intended to enable a defendant to "identify with sufficient particularity the nature of the charges against him," United States v. Bortnovsky, 820 F. 2d 572, 574 (2d Cir. 1987); United States v. Dames, 380 F.Supp.2d 270, 273 (S.D.N.Y. 2005); United States v. Aliperti, 867 F. Supp. 142, 148 (E.D.N.Y. 1994). Despite the somewhat different purposes, the rules are designed to allow a defendant to meet the charges presented against her. See, e.g., United States v. Manikatala, 934 F.2d 25, 28 (2d Cir. 1991) (Rule 16); United States v. Arreaga, 2005 WL 1253866 at *1 (S.D.N.Y.) (Rule 7(f)). Toward that end, as noted by the Supreme Court in Will v. United States, 389 U.S. 90 (1967), Rule 7(f) was amended in 1966 to liberalize the granting of particulars. See also Advisory Committee Note, 39 F.R.D. 69, 170 (1966).

In complex fraud cases like this, the government does not meet its discovery obligations under either rule by merely making voluminous documents available to the defense. E.g., Bortnovsky, 820 F.2d at 573-5; United States v. Trie, 21 F.Supp.2d 7, 21-22 (D.D.C 1998). In such cases the government is required to do more than provide "mountains of

documents to defense counsel who were left unguided" as to which specifically relate to the alleged fraud. <u>Bartnovsky</u>, 820 F.2d at 575.  <u>See also</u> <u>United States v. Weissman</u>, 1996 WL 751385 (S.D.N.Y.); <u>United States v. Upton</u>, 856 F.Supp. 727, 753 (E.D.N.Y. 1994). Instead, the government must provide particulars sufficient to apprise the defendant of the charges against her with enough specificity to enable her to adequately defend, even when it has provided extensive discovery. <u>United States v. Luna</u>, 2006 WL 1668006 (D.Conn.).   As was noted in <u>Luna</u>, at *2., and is particularly applicable to the case herein:

> [o]verwhelming a defendant with discovery can obscure the particulars of a charge as fully as denying discovery.  Thus, when faced with "mountains" of discovery, or "massive disclosures," a defendant may still be unable to prepare for trial and prevent surprise.

In addition, regardless of the amount of Rule 16 discovery provided, Courts grant particulars in prosecutions similar to the one herein, where the case involves overlapping allegations against multiple defendants, <u>see</u>, <u>e.g.</u>, <u>United States v. Lino</u>, 2001 WL 8356 (S.D.N.Y.), or are otherwise complex, <u>see</u>, <u>e.g.</u>, <u>United States v. Davidoff</u>, 845 F. 2d 1151 (2d Cir. 1988).  It is for these reasons Courts regularly require the government to provide the four types of particulars at issue herein, as set forth below.

1. **The Identity of Unnamed Co-Conspirators and Other Persons Referred to in the Indictment, but not Named.** See Exhibit A, requests 1, 8, and 14 as to count one. The government must provide the names of all unidentified individuals a defendant allegedly conspired with or who are alleged to have participated with her in the criminal conduct at issue. See United States v. Lino, 2001 WL 8356 at *12 (S.D.N.Y.); United States v. Falkowitz, 214 F.Supp.2d 365, 391-92 (S.D.N.Y. 2002); United States v. Bin Laden, 92 F.Supp.2d 225, 241 (S.D.N.Y. 2000); United States v. Vasquez, 1993 WL 78130 at *2 (S.D.N.Y.); United States v. Feola, 651 F.Supp. 1068, 1131-34 (S.D.N.Y. 1987), aff'd. without op., 875 F.2d 857 (2d Cir. 1989). Indeed, where there are a large number of co-conspirators and the conspiracy has lasted a period of years, as alleged in the case herein, courts regularly grant such requests. See, e.g., United States v. Nachamie, 91 F.Supp.2d 565, 572-73 (S.D.N.Y. 2000)

2. **The  location where Events are Alleged to Have Taken Place.** See Exhibit A, requests 2, 5, 10, and 11 as to count one. Where, as here, the indictment alleges events material to the allegations occurred in places unidentified (i.e., "elsewhere"), the government must identify those locations. United States v. Blau, 913 F.Supp. 218, 222 (S.D.N.Y. 1996), aff'd. 159 F.3d 68 (2d Cir. 1998)

**3. The Specific "False Information" the Government is Alleging the Defendants Provided, or the "Material Omissions" Involved in Obtaining the Mortgages in Question.** See Exhibit A, requests 4, 7, 12, 15, 16 as to count one, and both requests as to counts nine and fifteen. It is axiomatic, of course, that a defendant cannot defend against a charge that she or one of her co-conspirators made a false statement or withheld material information without knowing what the allegedly false statement or material omission was. Yet, this is precisely the position Ms. Zhigun finds herself in. For example, in paragraph "a" of the conspiracy charged in count one, it is alleged co-defendant Mishelevich "submitted and caused to be submitted" a mortgage application "containing false employment and other information." What the "other" information is left undefined. Such information is patently necessary for Ms. Zhigun to defend herself against this allegation. Bortnovsky, 820 F.2d at 575, Nachamie, 91 F.Supp. 2d at 574, 576; United States v. Chalmers, 410 F.Supp.2d 278, 286 (S.D.N.Y. 2006); United States v. Savin, 2001 WL 243533 at *4 (S.D.N.Y.); Upton, 856 F.Supp. at 753. See also United States v. McGuiness, 764 F.Supp. 888, 894 (S.D.N.Y. 1991).

**4. The Identity of the Properties Subject to the Allegedly False Applications.** See, Exhibit A, requests 3, 6, 9, 13 and 17 as to count one. It

is surely necessary for Ms. Zhigun to know the properties for which she allegedly conspired to obtain fraudulent mortgages. Yet, to cite just the first example, paragraph "a" of the conspiracy charged in count one alleges the submission of a fraudulent loan application for a property the indictment does not identify. It is simply not possible to defend against a charge of mortgage fraud when the defendant is not apprised of the property involved. See, e.g., Bortnovsky, 820 F.2d at 575, Nachamie, 91 F.Supp. 2d at 574, 576; Sanvin, 2001 WL 243533 at *4.

That the government has not identified all of the properties for which mortgages were allegedly obtained by fraud underscores an important point made by the authorities cited above, i.e., that providing voluminous documents, without more, is insufficient to enable a defendant to prepare for trial. In this instance, if Ms. Zhigun does not know which properties were involved in her alleged fraud, how can she know which files to examine out of the hundreds of property files to which access is being provided?

### POINT TWO: THERE WAS NO PROBABLE CAUSE TO SEARCH DEFENDANT'S OFFICE. THE ITEMS SEIZED MUST ACCORDINGLY BE SUPPRESSED.

### a. Procedural History

The original indictment in this case was unsealed on January 4, 2007. Twenty-two defendants were named. Galina Zhigun was not charged. The

initial indictment was unsealed the day after agents searched four different premises pursuant to warrants issued by a Magistrate Judge in the Eastern District of New York. The affidavit submitted in support of those searches is appended to the accompanying Notice of Motion as Exhibit B, and is discussed in detail in sub paragraph "b" below. One of the four searches was at the AGA Capital/Lending office of Galina Zhigun located at 2729 Coney Island Avenue, Brooklyn, New York (hereinafter "PREMISES 2"). It is that search which is addressed by the instant motion to suppress.   To fully understand the lack of probable cause underlying this search, we outline below the affidavit submitted in support.

**b. <u>The Affidavit In Support of the Search Warrants</u>**

On January 3, 2007 Special Agent Kevin O'Donnell executed a single affidavit in support of four separate searches: (1) the law office of Alex Rozenzaft at 293 Avenue S, Brooklyn, New York; (2) the office of Rigonda Financial at 1719 East 12th Street, Brooklyn, New York; (3) Galina Zhigun's AGA Capital office located at 2729 Coney Island Avenue, Brooklyn, New York; and (4) an "affiliated office" of AGA Capital at 2713 Coney Island Avenue, Brooklyn, New York (hereinafter "PREMISES 3"), run by defendant Aleksander Lipkin. (Exhibit B, bates stamped APP 0001- APP 0057. Hereinafter, all references to the affidavit will be by bates stamp).

Exhibit B generally claims probable cause to believe that certain crimes to defraud various banks and lending institutions had been committed from 2004 through December 2006 via the submission of applications and supporting documentation by defendants Aleksander Lipkin (hereinafter "Lipkin"), Igor Mishelevich (hereinafter "Mishelevich"), Alex Gorvits (hereinafter "Gorvits") Ighor Buzakher (hereinafter "Buzakher"), Marina Dubin (hereinafter "Dubin"), Lucianno Morello (hereinafter "Morello"), Daniel Mikhlin (hereinafter "Mikhlin"), and Faina Petrovskaya (hereinafter "Petrovskaya"), and others, acting as mortgage brokers, or in the case of Dubin, settlement agent (APP 0016 – APP 0017, APP 0019).

In support of its request for the search warrants for the four offices, the agent summarizes the evidence against certain alleged co-conspirators, including Lipkin, Mishelevich, Gorvits, Buzakher, Dubin, Mikhlin, and Petrovskaya, and each of the locations (APP 0015). A key component to these allegations are conversations that one cooperating witness had with SA O'Connell and various intercepted telephone calls (APP 0021, APP 0024 – APP 0027, APP 0035, and APP 0038 – APP 0042). No reference is made to Galina Zhigun, under whose license AGA Capital was operated, and who worked in the office at 2729 Coney Island Avenue. Special Agent O'Donnell presents no information that Ms. Zhigun was involved in any

<u>criminal activity</u>. Instead, the agent sets forth the alleged criminal acts of other persons, almost exclusively occurring <u>at other places</u>. In contrast to the specific surveillance, informant and wiretap information submitted as to the other locations, no such detail is provided to support the search of PREMISES 2, the search at issue herein.

It is noteworthy that the facts submitted to support the search of PREMISES 2 are lumped with the facts submitted to support the search of PREMISES 3, and much of the information provided deals specifically with activities at PREMISES 3. With respect to PREMISES 2, it is defined by the agent as a building at 2729 Coney Island Avenue, with a sign on the facade which reads "AGA Capital" (APP 0031). The claimed probable cause to search PREMISES 2 starts with its physical layout, as described by a confidential informant. The next reference to PREMISES 2 is the conclusory claim that "Lipkin and Gorvits, among others, act as mortgage brokers at PREMISES 2 and 3, where they direct the preparation and submission of fraudulent mortgage and loan applications." No details are provided.[2] There

---

[2] Significantly, the agent establishes that Lipkin and Morello operate out of PREMISES 3, <u>i.e.</u>, in a conversation with the receptionist who notes the business at PREMISES 3 is "run" by Lipkin, and merely "affiliated" with Lending Universe at PREMISES 2 (APP 0035). Indeed, the agent actually identifies Morello as working at PREMISES 3 (<u>id.</u>).

is no telephone surveillance, cooperating witness information, or video surveillance with respect to activities at PREMISES 2.

The only specifics provided as to activities allegedly occurring at PREMISES 2 are three mortgages and/or loans that were brokered by employees of AGA Capital/Lending Universe, and were allegedly obtained through the submission of false or misleading information (APP 0036). The mortgages/loans for these properties were funded in September – December, 2005 (id.), which means the forms containing the address of the interviewers were filled out months before any funding, and more than one year before the search at issue herein. One of the mortgages involves a property located at 221 Washington Avenue, Brooklyn, in which Buzhaker is listed on one of the forms as the interviewer, and who allegedly provided PREMISES 2 as his address (id.). The other two properties, at 330 Old Tacy, Kauneonga Lake, New York, and 100 Oceana Drive, Apt. #3E, Brooklyn, New York, have Lipkin listed as the interviewer (id.). In each, Lipkin apparently provided PREMISES 2 as his address (id.). Finally, the agent notes surveillance of Lipkin and Gorvits entering and leaving PREMISES 2 in May and July 2006. (APP 0033-34). That is the totality of "probable cause" presented to search PREMISES 2.

### c. **Legal Analysis**

The Fourth Amendment requires that search warrants issue only when there is probable cause to believe that fruits, instrumentalities or evidence of criminal acts exist at the place for which the warrant is requested. <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). As noted by the Second Circuit, the issuance of a search warrant requires that a neutral and detached magistrate finds that probable cause exists to believe (1) that a crime was committed and (2) evidence of the crime will be found in the place to be searched. <u>United States v. Travisano</u>, 724 F.2d 341, 346 (2d. Cir. 1983). Probable cause to believe that certain items to be searched for and seized are located on the property to which entry is sought, <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 556 (1978), is a "practical, nontechnical conception," <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949). The details offered by the affiant must provide a "substantial basis" given the "totality of the circumstances" set forth in the affidavit, for a reasonably prudent person to conclude that there was fair probability that evidence of crime would be found at a particular place. <u>Gates</u>, 462 U.S. at 238-39; <u>Berger v. New York</u>, 388 U.S. 41, 55 (1967). <u>See</u> <u>United States v. Smith</u>, 9 F.3d 1007, 1012 (2nd Cir. 1993). Probable cause must be based on particularized information about the person or place to be searched, not on "mere propinquity" to illegal activity. <u>Ybarra</u>

v. Illinois, 444 U.S. 85, 91 (1979). See also Maryland v. Pringle, 540 U.S. 366, 372-73 (2003). Finally, probable cause is more than a mere suspicion of wrongdoing, rather the focus is on probabilities. Gates, 462 U.S. at 238-39.

In the instant case, probable cause did not exist to find that evidence of a crime would then be found at PREMISES 2. In contrast to the information provided as to the other searched premises, no telephone lines originating from the location are monitored, no informant information is provided and no observations are made relating to illegal activity at PREMISES 2. The evidence offered in support of the application to search PREMISES 2 consists merely of (1) agent observations of two of the co-conspirators entering and leaving the location some six to seven months before the search and (2) three applications, for which no dates are provided, for closings which occurred late in 2005, in which fraudulent activity is alleged and were submitted by alleged co-conspirators, who listed PREMISES 2 as their address. This evidence does not satisfy the requisite "substantial basis" for a reasonably prudent person to conclude that there was fair probability that evidence of crime would be found at PREMISES 2. Gates, 462 U.S. at 238-39; Berger v. New York, 388 U.S. 41, 55 (1967). See also Smith, 9 F.3d at 1012.

14

## 1. <u>Propinquity</u>

As an initial matter, the fact that someone who is suspected of having committed a crime has entered and left a specific location on several ocassions does not provide sufficient probable cause to search that location. It is settled that mere propinquity does not provide probable cause. <u>See generally</u> <u>Ybarra</u>, 444 US. at 90-91; <u>United States v. Heath</u>, 455 F.3d 52, 70 (2d Cir. 2006). That two of the alleged main co-conspirators, Lipkin and Gorivts, were seen walking in and out of the PREMISES 2 six or seven months earlier, is less than sufficient. As noted in <u>United States v. Trujillo</u>, 2004 WL 813645 at *4 (D.Kan.), "mere propinquity to a person engaged in illegal activity" is insufficient to find probable cause to search a location. Thus, there is insufficient evidence presented in the affidavit that a search of PREMISES 2 would uncover fruits or instrumentalities of the fraud described. <u>See</u> <u>Gates</u>, 462 U.S. at 238; <u>Travisano</u>, 724 F.2d at 345.

## 2. <u>Staleness</u>

Moreover, the only direct evidence offered to in support of the search of PREMISES 2, <u>i.e.</u>, that Lipkin and Buzhaker listed as their address PREMISES 2 on forms seemingly prepared in the spring or summer of 2005, in which the government contends contain fraudulent statements or lead to fraudulent activity, is not only slim, but is also stale. As noted by the

15

Second Circuit, "[i]n evaluating probable cause, a magistrate is always required to consider whether the facts adduced in the warrant application "appear [ ] to be current, *i.e.*, true at the time of the application," or whether they have 'become stale.'" Walczyk v. Rao, 496 F.3d 139, 162 (2d Cir. 2007)(citation omitted). "It is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." United States v. Beltempo, 675 F.2d 472, 478 (2d. Cir.)(citation omitted), cert. denied, 457 U.S. 1135 (1982). Such evidence of probable cause cannot be used if it is of some time in the past. United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993).

The three forms discussed above, for closings occurring at the end of 2005, must have submitted many months earlier.[3] While there is no "bright line" test beyond which probable cause ceases to exist, Beltempo, 675 F.2d at 478, the Second Circuit, in finding insufficient evidence to support a finding of probable cause, has used approximately two years as a cut-off date. United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir. 1985).

In this case, forms submitted by Lipkin and Buzhaker, in which they allegedly listed PREMISES 2 as their address to fraudulently obtain loans for closings, were filled out anywhere between one and two years prior to

---

[3] The government fails to provide the date of the forms in the affidavit.

16

SA O'Donnell's affidavit, rendering stale this evidence of possible crimes at PREMISES 2.

Compounding this problem is that PREMISES 3, the "affiliated office" of AGA Capital, the office run by Lipkin (APP 0035), opened in June 2006 (APP 0031). Thus, evidence connected to Lipkin would naturally be found at the office he runs, i.e., PREMISES 3. This is particularly important because the evidence of alleged illegal activity occurred in the late summer or fall of 2006. Accordingly, any evidence connected to alleged illegal activity by Lipkin would most likely be found at the office that he ran since June 2006, not at an office for which he listed an address sometime in 2005. Furthermore, the agent offers no evidence that Gorvits is currently working at PREMISES 2. Thus, the "probable cause" related to these three properties was stale.

Accordingly, a finding of probable cause based on the "totality of the circumstances," Gates, 462 U.S. at 213, was not merited, as the specific information related to PREMISES 2 was both insufficient and stale. For those reasons, any evidence derived from the search of PREMISES 2 must be suppressed.

## **CONCLUSION**

Defendant Galina Zhigun respectfully requests the Court to grant her pre-trial motions for a bill of particulars and the suppression of evidence for the reasons set forth above.

Respectfully submitted,

_____
Robert F. Katzberg (RFK-6013)
KAPLAN & KATZBERG
Attorneys for Defendant
Galina Zhigun
767 Third Ave., 26th Fl.
New York, New York 10017
(212) 750-3100

DATED:    New York, New York
          December 19, 2007


TO:    Jonathan Brian New, Esq.
       Katherine Rachael Goldstein, Esq.
       Assistant U.S. Attorneys
       One St. Andrew's Plaza
       New York, New York 10007

       All Defense Counsel

       (All Via ECF)